IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Calvin Harris,<br><br>      Plaintiff,<br><br>v.<br><br>Lt Dock Copeland, a/k/a Lt John D. Copeland, a/k/a John Copeland; Officer Laury; and The South Carolina Department of Corrections,<br><br>      Defendants. | Civil Action No.2:11-cv-02209-GRA-BHH<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

  The plaintiff, a state prisoner represented by counsel, brought this action pursuant to Title 42, United States Code, Section 1983, and state law. This matter is before the Court upon Defendant Laury's Motion to Dismiss (Dkt. No. 6) and Defendant Laury's "Motion to Dismiss Failure to Serve." (Dkt. No. 23.)

  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(d), D.S.C., all pretrial proceedings in prisoner petitions for relief under 42 U.S.C. § 1983 are referred to a United States Magistrate for consideration.

  The plaintiff brought this action on August 20, 2011. On September 12, 2011, Defendant Laury filed a Motion to Dismiss. (Dkt. No. 6.) Plaintiff filed a Response in Opposition on September 28, 2011. (Dkt. No. 13.) On October 5, 2011, Defendant Laury filed a second Motion to Dismiss. (Dkt. No. 23.) Plaintiff opposes that motion. (Dkt. No. 25.)

## **PROCEDURAL FACTS**

  Plaintiff, who is currently housed at Broad River Correctional Institution ("BRCI") of the South Carolina Department of Corrections ("SCDC"), alleges claims pursuant to 42 U.S.C. § 1983 and state law. Plaintiff alleges that on April 10, 2009, he was issued an "order to report," which is a "document issued to an inmate authorizing him to report to a specific location within the [BRCI] . . . , e.g. to go to a class, an appointment or a work detail." (Am.

Compl. ¶ 11.) Plaintiff states that "[a]n 'order to report' is not contraband" and that Plaintiff "was authorized and required to have the document in his possession." (Id.) Plaintiff alleges the at-issue "order to report" authorized him "to report to Mr. David E. Holcombe in the education building every day from April 13–17, 2009." (Id. ¶ 12.) According to Plaintiff, Defendant Copeland "continually harassed the Plaintiff [during this time] with regard to his reporting to the education building and sometimes would not allow him to report." (Id.)

Plaintiff alleges that he complained to several officials at BRCI about Defendant Copeland's conduct and "sought their assistance in stopping Lt. Copeland from continuing to harass the Plaintiff about reporting to the education building," and that Defendant Copeland knew Plaintiff complained about Copeland's conduct. (Id. ¶ 13.) Plaintiff alleges that he "was to present the 'order to report' as evidence in his grievance against Lt. Copeland." (Id.)

According to Plaintiff, on April 16, 2009, he "was locked in his cell when Lt. Copeland and Officer Laury" came to his cell. (Id. ¶ 14.) Plaintiff alleges that Copeland demanded Plaintiff turn over the "order to report," used profanity towards Plaintiff, and "threatened to keep Plaintiff locked in his cell for three weeks and feed him with bag meals until he starved." (Id.) Plaintiff further alleges that when he failed to turn the "order to report" over to Defendant Copeland, Copeland ordered Plaintiff to put all his belongings into a pillowcase and "intended to put the Plaintiff in a 'lock up' cell in order to coerce him into turning over the 'order to report.'" (Id. ¶ 15.) Plaintiff states that Copeland "had no legitimate justification to demand the Plaintiff turn over the "order to report" and that Plaintiff "reasonably believed that Lt. Copeland would destroy the document" and therefore did not turn over the "order to report." (Id. ¶ 17.)

Plaintiff alleges that he could not place all of his belongings into the pillowcase, and he "asked for an explanation of what was happening and specific instructions about what

2

he was to do." (Id. ¶ 16.) Plaintiff contends that instead of answering Plaintiff, Copeland pushed Plaintiff out of the cell and attempted to push Plaintiff down a flight of concrete stairs. (Id.; see also id.. ¶ 18.) Plaintiff states that Copeland "jumped the Plaintiff, placed him in a headlock and threw him backwards onto the floor." (Id. ¶ 18.) Plaintiff alleges that after Copeland threw him on the floor, Copeland "straddled Plaintiff's mid-section and grabbed the Plaintiff's throat to choke him," leaving "marks on both sides of his neck consistent with fingerprints and broken capillaries in his eyes." (Id. ¶ 19.) Plaintiff states that he flipped onto his stomach in an effort to stop the choking and "voluntarily placed his hands behind his back so that Lt. Copeland could handcuff him." (Id. ¶ 20.) Plaintiff alleges that Copeland did not handcuff him but instead, "[w]hile the Plaintiff was in a submissive position, . . . Lt. Copeland struck the Plaintiff three times to the back of his head with a gas canister," wounding Plaintiff. (Id. ¶¶ 20-21.)

In addition, Plaintiff alleges that he "called to Officer Laury for assistance to stop the beating," but that Laury "refused to intervene or render any assistance." (Id. ¶ 22.) According to Plaintiff, he "stated to Lt. Copeland and Officer Laury that he was not resisting, at which point Lt. Copeland grabbed the Plaintiff's right wrist and pulled it up vertically over the Plaintiff's head and then twisted the arm back and around[,] inflicting excruciating pain and causing the Plaintiff's shoulder to become dislocated and fractured." (Id. ¶ 23.) Plaintiff states that a short time later, Copeland placed Plaintiff in the lock up cell and left "without notifying medical personnel of the Plaintiff's condition." (Id. ¶ 28.) Plaintiff alleges that "[s]ometime later Officer Laury came to the Plaintiff's cell and notified the shift supervisor and medical authorities." (Id.) Plaintiff states that he "subsequently had to undergo surgery on his right shoulder to repair the damage and several weeks of physical therapy." (Id. ¶ 31.)

Plaintiff seeks, *inter alia*, compensatory and punitive damages. (See Am. Compl. at 10.)

## **DISCUSSION**

As noted above, Laury has filed two Motions to Dismiss. (See Dkt. No. 6; Dkt. No. 23.) In the first motion, Laury seeks dismissal pursuant to Rule 12(b)(4) and Rule 12(b)(5) "on the grounds that Plaintiff has failed to serve, or properly serve, Defendant Laury." (Dkt. No. 6 at 1.) The motion states,

> Officer Laury left employment with the South Carolina Department of Corrections on June 8, 2010; Plaintiff did not file his action or attempt service upon Defendant Laury through the South Carolina Department of Corrections until August 2011, long after Officer Laury left her employment with the Department.
> The undersigned attorneys, who were retained by the South Carolina Insurance Reserve Fund to defend Laury, have (1) mailed letters to Defendant Laury's last known addresses; (2) researched other possible addresses for Defendant Laury; (3) given all of these addresses to Plaintiff's counsel; and (4) called all known telephone numbers for Defendant Laury. However, all attempts to contact Defendant Laury have proven unsuccessful.

(Id. at 1-2.) In the second Motion to Dismiss, Laury makes the same argument in favor of dismissal. (See Dkt. No. 23.) Laury noted that–at least as of the filing of the motion on October 5, 2011–although Plaintiff had additional time to serve Laury, Laury left employment with SCDC on June 8, 2010, and all attempts to contact Laury have proven unsuccessful. (Id. at 2; see also Aff. of Darlene S. Harmon.)

Plaintiff opposed the motions on the grounds that–as of the time the motions were filed–Plaintiff had additional time for service pursuant to Rule 4(m) of the Federal Rules of Civil Procedure. (See Dkt. No. 13; Dkt. No. 25.)

Rule 4(m) of the Federal Rules of Civil Procedure, entitled "Time Limit for Service," provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the

4

> action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

As noted above, Plaintiff filed the instant action on August 20, 2011. (See Dkt. No. 1.) Laury therefore filed both Motions to Dismiss prior to the expiration of the 120-day period set forth in Rule 4(m). (See Dkt. No. 6; Dkt. No. 23.) Since the filing of these motions, however, the 120-day period has expired. Although Plaintiff's counsel stated in his October 23, 2011 filing that "Plaintiff is attempting to locate Officer Laury and fully expects to effect personal service upon Officer Laury before the expiration of the 120 day time limit established by Rule 4(m)," it appears from a review of the docket that Laury still has not been served. (Dkt. No. 25 at 2-3.)

Given that Laury is no longer employed at SCDC, and Plaintiff has been attempting to locate Laury for service, the undersigned recommends denial of the motions to dismiss without prejudice. (See Dkt. No. 6; Dkt. No. 23.) In addition, if the District Judge accepts this Report and Recommendation, the undersigned recommends that Plaintiff be given sixty days from the date of the District Judge's Order within which to serve Defendant Laury.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Laury's Motion to Dismiss (Dkt. No. 6) and Laury's "Motion to Dismiss Failure to Serve" (Dkt. No. 23) be DENIED without prejudice. In addition, should the District Judge adopt this Report and Recommendation, it is

RECOMMENDED that Plaintiff be given sixty (60) days from the date of the District Judge's Order within which to serve Defendant Laury.

    IT IS SO RECOMMENDED.


                                            s/Bruce Howe Hendricks
                                            United States Magistrate Judge

February 17, 2012
Charleston, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).