IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Calvin Harris, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Lt Dock Copeland, a/k/a Lt John D. ) <br> Copeland, a/k/a John Copeland; ) <br> Officer Laury; and The South Carolina ) <br> Department of Corrections, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No.2:11-cv-02209-GRA-BHH <br><br> **REPORT AND RECOMMENDATION** <br> **OF MAGISTRATE JUDGE** |

The Plaintiff, a state prisoner represented by counsel, brought this action pursuant to Title 42, United States Code, Section 1983, and state law. This matter is before the Court upon Defendant Laury's Motion to Dismiss (Dkt. No. 99) and Defendants' Motion for Summary Judgment (Dkt. No. 105).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(d), D.S.C., all pretrial proceedings in prisoner petitions for relief under 42 U.S.C. § 1983 are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on August 20, 2011. On September 12, 2011, Defendant Laury filed a Motion to Dismiss; that motion was ultimately denied by Judge Anderson on April 16, 2012, and Plaintiff was given sixty days from the date of Judge Anderson's Order to serve Defendant Laury. (Dkt. No. 76.) On October 8, 2012, Defendant Laury filed a second Motion to Dismiss. (Dkt. No. 99.) Plaintiff filed a Response to that motion on October 25, 2012. (Dkt. No. 100.)

On November 19, 2012, Defendants filed a Motion for Summary Judgment. (Dkt. No. 105.) Plaintiff filed a Response in Opposition (Dkt. No. 107), to which Defendants filed a Reply (Dkt. No. 109).

**PROCEDURAL FACTS**

Plaintiff, who is currently housed at Broad River Correctional Institution ("BRCI") of the South Carolina Department of Corrections ("SCDC"), alleges claims pursuant to 42 U.S.C. § 1983 and state law. Plaintiff alleges that on April 10, 2009, he was issued an "order to report," which is a "document issued to an inmate authorizing him to report to a specific location within the [BRCI] . . . , e.g. to go to a class, an appointment or a work detail." (Am. Compl. ¶ 11.) Plaintiff states that "[a]n 'order to report' is not contraband" and that Plaintiff "was authorized and required to have the document in his possession." (Id.) Plaintiff alleges the at-issue "order to report" authorized him "to report to Mr. David E. Holcombe in the education building every day from April 13–17, 2009." (Id. ¶ 12.) According to Plaintiff, Defendant Copeland "continually harassed the Plaintiff [during this time] with regard to his reporting to the education building and sometimes would not allow him to report." (Id.)

Plaintiff alleges that he complained to several officials at BRCI about Defendant Copeland's conduct and "sought their assistance in stopping Lt. Copeland from continuing to harass the Plaintiff about reporting to the education building," and that Defendant Copeland knew Plaintiff complained about Copeland's conduct. (Id. ¶ 13.) Plaintiff alleges that he "was to present the 'order to report' as evidence in his grievance against Lt. Copeland." (Id.)

According to Plaintiff, on April 16, 2009, he "was locked in his cell when Lt. Copeland and Officer Laury" came to his cell. (Id. ¶ 14.) Plaintiff alleges that Copeland demanded Plaintiff turn over the "order to report," used profanity towards Plaintiff, and "threatened to keep Plaintiff locked in his cell for three weeks and feed him with bag meals until he starved." (Id.) Plaintiff further alleges that when he failed to turn the "order to report" over to Defendant Copeland, Copeland ordered Plaintiff to put all his belongings into a

2

pillowcase and "intended to put the Plaintiff in a 'lock up' cell in order to coerce him into turning over the 'order to report.'" (Id. ¶ 15.) Plaintiff states that Copeland "had no legitimate justification to demand the Plaintiff turn over the "order to report" and that Plaintiff "reasonably believed that Lt. Copeland would destroy the document" and therefore did not turn over the "order to report." (Id. ¶ 17.)

Plaintiff alleges that he could not place all of his belongings into the pillowcase, and he "asked for an explanation of what was happening and specific instructions about what he was to do." (Id. ¶ 16.) Plaintiff contends that instead of answering Plaintiff, Copeland pushed Plaintiff out of the cell and attempted to push Plaintiff down a flight of concrete stairs. (Id.; see also id.. ¶ 18.) Plaintiff states that Copeland "jumped the Plaintiff, placed him in a headlock and threw him backwards onto the floor." (Id. ¶ 18.) Plaintiff alleges that after Copeland threw him on the floor, Copeland "straddled Plaintiff's mid-section and grabbed the Plaintiff's throat to choke him," leaving "marks on both sides of his neck consistent with fingerprints and broken capillaries in his eyes." (Id. ¶ 19.) Plaintiff states that he flipped onto his stomach in an effort to stop the choking and "voluntarily placed his hands behind his back so that Lt. Copeland could handcuff him." (Id. ¶ 20.) Plaintiff alleges that Copeland did not handcuff him but instead, "[w]hile the Plaintiff was in a submissive position, . . . Lt. Copeland struck the Plaintiff three times to the back of his head with a gas canister," wounding Plaintiff. (Id. ¶¶ 20-21.)

In addition, Plaintiff alleges that he "called to Officer Laury for assistance to stop the beating," but that Laury "refused to intervene or render any assistance." (Id. ¶ 22.) According to Plaintiff, he "stated to Lt. Copeland and Officer Laury that he was not resisting, at which point Lt. Copeland grabbed the Plaintiff's right wrist and pulled it up vertically over the Plaintiff's head and then twisted the arm back and around[,] inflicting excruciating pain and causing the Plaintiff's shoulder to become dislocated and fractured." (Id. ¶ 23.) Plaintiff

states that a short time later, Copeland placed Plaintiff in the lock up cell and left "without notifying medical personnel of the Plaintiff's condition." (Id. ¶ 28.) Plaintiff alleges that "[s]ometime later Officer Laury came to the Plaintiff's cell and notified the shift supervisor and medical authorities." (Id.) Plaintiff states that he "subsequently had to undergo surgery on his right shoulder to repair the damage and several weeks of physical therapy." (Id. ¶ 31.)

Plaintiff seeks, *inter alia*, compensatory and punitive damages. (See Am. Compl. at 10.)

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

**A.     Defendant Laury's Motion to Dismiss (Dkt. No. 99)**

As noted above, Defendant Laury has renewed her Motion to Dismiss. (Dkt. No. 99.) In the motion, Laury states that she seeks dismissal pursuant to Rule 12(b)(4) and Rule 12(b)(5) "on the grounds that Plaintiff has failed to serve, or properly serve, Defendant

Laury." (Dkt. No. 99 at .) Laury further states that she seeks to be dismissed from the instant lawsuit "on the ground that the Plaintiff has failed to serve, or properly serve, Defendant Laury either within the proper time period or within the statute of limitations." (Id.)

In the Plaintiff's Response in Opposition, filed on October 25, 2012, Plaintiff conceded that, "despite his efforts, he has been unsuccessful in effecting service upon Officer Cathleen Laury within the time allowed by the Federal Rules of Civil Procedure and the Court's order (ECF # 76)." (Dkt. No. 100 at 1.) Plaintiff states, "Based on our investigation, Officer Laury has moved multiple times since leaving the employment of the South Carolina Department of Corrections, which has prevented the Plaintiff from effecting service of the Summons and Complaint." (Id.) Plaintiff objects, however, "to the extent the Motion to Dismiss could be interpreted or is intended to include the state law causes of action for assault, battery and gross negligence, which involved Officer Laury, but are directed toward the South Carolina Department of Corrections." (Id.) Plaintiff requested that the Court's order recognize that the claims involving Officer Laury, but directed toward the South Carolina Department of Corrections (as required by S.C. Code § 15-78-70(c)), are not affected by the dismissal of Officer Laury as an individual party defendant." (Id. at 2.)

A few days later–on November 7, 2012, Plaintiff supplemented his Response. (Dkt. No. 102.) In that filing, Plaintiff's counsel stated that Laury had been served with the Summons and Complaint. (Dkt. No. 102 at 1; see also Dkt. No. 102-1.) It appears that Defendant Laury was served on November 5, 2012, when she was produced for her deposition. (Dkt. No. 102 at 2 of 3; see also Dkt. No. 102-1.) Plaintiff's counsel explained the lengths he went to–to no avail–to locate Defendant Laury and have her served. (See generally Dkt. No. 102.) Plaintiff's counsel further states that–while Defense counsel indicated their willingness to assist Plaintiff in locating Laury–Defense counsel spoke with Laury prior to the expiration of the sixty-day period provided for in Judge Anderson's Order

dated April 10, 2012, and failed to so advise Plaintiff's counsel. (Dkt. No. 102 at 2-3; see also Dkt. No. 75.) Plaintiff contends that Laury should not be dismissed because the case was filed within the statute of limitations, and Laury attempted to avoid service. (Dkt. No. 102 at 3.) Plaintiff further states that the case "will not be delayed if Laury remains in the case as a party-defendant" because the case "has proceeded through discovery and the same attorneys that have been representing Lt. Copeland and SCDC have indicated they will represent Laury." (Dkt. No. 102 at 3.)

Defendants filed a Reply. (Dkt. No. 103.) In that Reply, Defendants state that they made contact with Laury in May of 2012 and "urged her to allow them to accept service." (Dkt. No. 103 at 6.) Laury, however, denied that request. (Id.; see also Dkt. No. 103-2.) Laury was finally served at her deposition on November 5, 2012. (Dkt. No. 103-2.)

Pursuant to Judge Anderson's previous order, Plaintiff had until June 15, 2012, to serve Defendant Laury. (Dkt. No. 76.) Laury was served some 143 days later, on November 5, 2012. Defendants contend that Laury should be dismissed pursuant to Rule 12(b)(4) and Rule 12(b)(5) of the Federal Rules of Civil Procedure because she was not served within the time set by Judge Anderson's order and because she was not served within the statute of limitations. (See generally Dkt. No. 99.)

Under Rules 12(b)(4) and 12(b)(5), a defendant can move to dismiss a complaint where service of process failed to comply with the requirements of Rule 4 of the Federal Rules of Civil Procedure. See FED. R. CIV. P. 12(b)(4); FED. R. CIV. P. 12(b)(5). The Court has discretion to dismiss a case under Rule 12(b)(5) for insufficient service of process. Reinhold v. Tisdale, 8:06–3311–MBS–BHH, 2007 WL 2156661, at *3 (D.S.C. Apr.30, 2007) (citing Dimensional Comm'ns, Inc. v. OZ Optics, Ltd., 218 F.Supp.2d 653, 655 (D.N.J.2002)), adopted at 2007 WL 2173368 (D.S.C. July 26, 2007). "Ordinarily, dismissal is proper when there is prejudice to the defendant or where proper service is unlikely to be

6

accomplished." Id. (citing Curcuruto v. Cheshire, 864 F.Supp. 1410, 1411 (S.D.Ga.1994)). However, absent prejudice to the defendant and when service can be accomplished, courts generally will quash the insufficient service and allow a plaintiff to perfect service. Id.

Noncompliance with Rule 4 of the Federal Rules of Civil Procedure does not mandate dismissal where the necessary parties have received actual notice of a suit and where they have not been prejudiced by the technical defect in service. See Karlsson v. Rabinowitz, 318 F.2d 666, 668-69 (4th Cir.1963) (upholding service upon the defendant's wife at a home to which the defendant never intended to return). Rule 4(m) of the Federal Rules of Civil Procedure, entitled "Time Limit for Service," provides as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

The undersigned recommends finding "good cause" for the failure to serve within the period set forth in Judge Anderson's previous order. Laury had notice of the instant lawsuit within this time period but elected not to allow defense counsel to accept service. While that was certainly her right, to seek dismissal now on that basis appears disingenuous. This is especially so in light of defense counsel's statement in a letter to counsel for Plaintiff:

> We cannot accept service on behalf of Defendant Laury because she no longer works for the Department of Corrections and we have been unable to contact her. **We will provide whatever help we can in locating former Correctional Officer Laury**. If we make contact with her, we will ask that she allow us to accept service on her behalf.

(Dkt. No. 102-4 (emphasis added).) Although defense counsel did, as promised, ask Laury to allow them to accept service, defense counsel did not "provide whatever help we can in locating" Laury, as they clearly had contact with her within the time frame set by Judge

7

Anderson's order and failed to alert counsel for Plaintiff of this contact. (See Dkt. No. 102 at 2-3; see also Dkt. No. 103 at 5-6.) Such failure should not inure to Laury's benefit. The undersigned therefore recommends finding "good cause" to extend the period of service up to and including November 5, 2012. See, e.g., Hoffman v. Baltimore Police Dep't, 379 F. Supp. 2d 778, 786 (D. Md. 2005) (noting that courts have found "good cause" when "the defendant was evading service; the plaintiff experienced difficulty in obtaining defendant's proper address; the plaintiff was misdirected by court personnel as to proper procedure; or a defect in the attempted service was not revealed by the defendant until after the time expired" (internal citations omitted)). As a result, the undersigned recommends denying Laury's Motion to Dismiss (Dkt. No. 99).

**B.     Defendants' Motion for Summary Judgment (Dkt. No. 105)**

Defendants have also filed a Motion for Summary Judgment. (Dkt. No. 105.) For the reasons set forth below, the undersigned recommends denial of that motion.

**1. Individual Versus Official Capacity Claims**

Defendants first make much of the fact that, at all relevant times, Defendants Copeland and Laury "were acting as . . . employee[s] of the State of South Carolina." (Dkt. No. 105-1 at 5 of 25.) Defendants contend that Plaintiff's Amended Complaint "makes allegations against Defendant Copeland and Defendant Laury *only within their individual capacities*," and Copeland and Laury are therefore not "persons" pursuant to 42 U.S.C. § 1983. (Dkt. No. 105-1 at 10 of 25.) This argument need not detain the Court long.

Plaintiff's Amended Complaint does not specifically state whether Plaintiff is suing Copeland and Laury in their official capacities, individual capacities, or both. (See generally Dkt. No. 11.) Of course, Defendant South Carolina Department of Corrections is not liable pursuant to § 1983 on the facts as alleged in the Amended Complaint. See Moore v. Laurens County, No. 6:09–cv–03083–JMC, 2011 WL 4345893, at *2 (D.S.C. Sept. 16,

2011) ("SCDC is an administrative agency of the State of South Carolina, see S.C.Code Ann. § 24–1–30 (2010), and thus does not qualify as a person subject to suit under section 1983."); see also Adams v. S.C. Dep't of Corrs., No. 5:12–cv–479–GRA–KDW, 2012 WL 6528306, at *2 (D.S.C. Oct. 15, 2012), adopted at 2012 WL 6527709 (D.S.C. Dec. 12, 2012). However, this Court cannot assume the Amended Complaint's silence infers that this suit is brought against Defendants Laury and Copeland in their official capacities, as "the underlying inquiry [is] whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly." Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir.1995). "[W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." Id. The mere fact that Plaintiff is represented by counsel does not change this analysis. See DeCecco v. Univ. of S.C., —F. Supp. 2d —, 2013 WL 168221, at *25 (D.S.C. Jan. 16, 2013) (stating, in a counseled case, that "[t]he factors listed in Biggs support finding that DeCecco's Section 1983 claim is pursued against the Smiths, at least in part, in their individual capacities"). It is clear from reading Plaintiff's Amended Complaint that he intended to sue Defendants Laury and Copeland in their individual capacities. See Biggs, 66 F.3d at 61. (See Am. Compl. at 10 of 10 (seeking, *inter alia*, general, special, and punitive damages); see also Dkt. No. 21 ¶ 48 (Copeland asserting qualified immunity defense).)[1] Accordingly, Defendants' argument that they are entitled to summary judgment due to Plaintiff's alleged imprecise pleading must be rejected.

---

[1]In their Reply, Defendants cite to Amos v. Maryland Department of Public Safety & Correctional Services, 126 F.3d 589 (4th Cir. 1997), for the proposition that the Biggs rule does not apply where the prisoner is represented by counsel. (Dkt. No. 109 at 6.) Defense counsel seems to overlook the fact that in Amos–unlike in the case *sub judice*–capacity was specifically alleged.

**2. Eleventh Amendment Immunity**

Defendants next argue that they are entitled to summary judgment because they have immunity pursuant to the Eleventh Amendment. (See Dkt. No. 105-1 at 10-12.) In his Response, Plaintiff states that he "understands that SCDC, as a state agency, is not a 'person' within the meaning of § 1983," but that "[a] state agency may be sued in federal court, pursuant to 28 U.S.C. § 1367, when the state waives sovereign immunity, as South Carolina did when it enacted the SC Tort Claims Act." (Dkt. No. 107 at 14.)

The Eleventh Amendment provides: "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State or by citizens or subjects of any foreign state." In enacting 42 U.S.C. § 1983, Congress did not intend to override the doctrine of States' sovereign immunity found in the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58, 67 (1989). As the Supreme Court stated in Will,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Will, 491 U.S. at 66 (citation omitted). Although state officials "literally are persons," "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which is "no different from a suit against the State itself." Id. at 71. However, the Eleventh Amendment does not bar § 1983 suits against state officials sued in their individual capacities. See Hafer v. Melo, 502 U.S. 21, 31 (1991) ("We hold that state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature

of their acts."); see also Lizzi v. Alexander, 255 F.3d 128, 137 (4th Cir. 2001) (overruled in part on other grounds by Nevada Dep't. of Human Resources v. Hibbs, 538 U.S. 721 (2003)).

To the extent Plaintiff brings claims against Defendants in their official capacities, those claims are barred by the Eleventh Amendment. See Will, 491 U.S. 58; see also Hafer, 502 U.S. 21. And, as noted above, and as Plaintiff concedes, Plaintiff does not have a § 1983 claim against Defendant South Carolina Department of Corrections. Plaintiff does, however, have individual capacity claims against Laury and Copeland that are not barred by the Eleventh Amendment. See Hafer, 502 U.S. at 31. Defendants' request for summary judgment on Eleventh Amendment immunity grounds must therefore be rejected.

### 3. Merits of Excessive Force Claim

Defendants contend they are entitled to summary judgment on the merits of the excessive force claim because the "need for force . . . has been substantiated," and "there is no evidence that any force used by the Defendant was excessive." (Dkt. No. 105-1 at 15.) Defendants also state that Plaintiff "has not shown evidence of true injury." (Id. at 18.)

To establish an Eighth Amendment excessive force claim against a prison official, an inmate must satisfy a two-pronged standard comprised of both a subjective inquiry (whether the defendant acted with a sufficiently culpable state of mind) and an objective inquiry (whether the force applied was objectively harmful enough to amount to a constitutional violation). Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The subjective component requires an inmate to demonstrate that the force used by the officer inflicted unnecessary and wanton pain and suffering, a question that turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Factors the court should

consider in determining whether a prison official acted maliciously and sadistically include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; and (4) any efforts made to temper the severity of a forceful response. See Hudson, 503 U.S. at 7; see also Williams, 77 F.3d at 762.

To prove the objective component of an excessive force claim, an inmate "must show that correctional officers' actions, taken contextually, were 'objectively harmful enough' to offend 'contemporary standards of decency.'" Stanley v. Hejirika, 134 F.3d 629, 634 (4th Cir. 1998) (quoting Hudson, 503 U.S. at 8). Under this analysis, the court "evaluate[s] the force applied and the seriousness of the resulting injury against the need for the use of force and the context in which that need arose." Id. at 634.[2]

Taking the evidence in the light most favorable to Plaintiff–as is required on this Motion for Summary Judgment–the undersigned recommends denying the motion as to the merits of the excessive force claim. Although Defendants' version of the events is very different, Plaintiff presented evidence that on April 16, 2009, he had an Order to Report ("OTR") to Horticulture, where he had been helping–with proper authorization–Inmate Fred Flores with getting the greenhouse and classroom in order so the horticulture program could resume at Broad River Correctional Institution. (Pl. Aff. ¶¶ 2-8.) Plaintiff presented evidence that, at approximately 8:30 AM, he proceeded towards Horticulture but was called back to the dorm by Copeland. (Id. ¶ 8.) Plaintiff stated in his Affidavit that even though Plaintiff showed the OTR to Copeland, Copeland refused to allow Plaintiff to go to Horticulture. (Id.) Plaintiff further stated that he spoke to Sergeant Weston, the yard sergeant that day, and

---

[2]In Wilkins v. Gaddy, 130 S. Ct. 1175 (2010), the Supreme Court abrogated the Fourth Circuit interpretation of Hudson requiring dismissal of excessive force claims in the absence of more than *de minimis* injury.

that Weston advised Plaintiff "if I had an OTR then I could go to Horticulture and that Lt. Copeland could not stop me from going." (Id. ¶ 10.) When Weston called for work/school around noon that day, Plaintiff left for Horticulture. (Id. ¶ 11.) Plaintiff stated,

> I left the dorm to go through the Education Building. A corrections officer mans each gate. I am required to show each gate guard the OTR in order to pass through the gate, which I did. None of the guards stopped me from passing through the gate.

(Id.)

Plaintiff further presented evidence that he heard Copeland over the radio and heard Weston reply to Copeland, "I can't do that, sir, he has an OTR." (Id. ¶ 12.) According to Plaintiff, Copeland ran across the yard and stopped Plaintiff in front of the Education Building. (Id. ¶ 13.) Plaintiff stated that Copeland contended the OTR was forged, demanded Plaintiff turn over the OTR to Copeland, and told Plaintiff that he was going to be charged with being out of place. (Id.) Plaintiff states that he went back to the dorm and "was deadlocked, alone, in [his] cell . . . by Officer Stevenson." (Id. ¶ 15.)

Plaintiff presented evidence that Copeland came by Plaintiff's cell later in the day, demanding the OTR. (Id. ¶ 16.) When Plaintiff advised that he did not have the OTR, Copeland "started yelling profanity" and threatened to keep Plaintiff "deadlocked in [his] cell for three weeks and feed [him] bagged meals until [Plaintiff] starved." (Id. ¶ 17.) Plaintiff further stated in his Affidavit:

> 18. He [(Copeland)] came back a few minutes later with Officer Laury. **I was still locked in my cell, alone**. I was not causing any trouble or being disruptive. He told me to put all of my belongings in a pillowcase or they would be left behind. The Wateree Dorm has two cells that are stripped bare and used as deadlocked cells. I asked him if I was going to the deadlock cell. I thought he was trying to do an informal resolution of his charge that I was out of place by moving me to the deadlock cell. I told Lt. Copeland that I refused his informal resolution and that I wanted him to write it up and refer it to the Major. I told him I wanted to see the Major or the Captain. I never threatened him in any way or used any physical force against him.

13

19. Lt. Copeland then pushed me out of the cell. We were walking toward the stairs that led to the first floor. **When we reached the top of the stairs he attempted to push me down the stairs** but I was able to grab hold of the stair railing to keep from falling.

20. Lt Copeland **then jumped on me, put my head in a headlock / chokehold and threw me backward onto the floor**. **Lt. Copeland then straddled my stomach and put his hands on my throat and started choking me.** I flipped over on my stomach to stop the choking and put my hands behind my back so that Lt. Copeland could put the handcuffs on me. He never tried to handcuff me. **Lt. Copeland punched me three times in the back of my head with a gas canister. I told Lt. Copeland and Officer Laury that I was not resisting** . . . .

21. Lt. Copeland **put his knee in my back, grabbed my right wrist and pulled it up vertically over my head and then twisted it back and around which caused me excruciating pain and dislocated my shoulder**. I felt my shoulder pop out of place. Lt. Copeland **then grabbed my ankles and started dragging me toward the stairs**. When I realized that he was going to drag me down two flights of concrete stairs, I grabbed hold of the stair rail and hung on for dear life. Lt. Copeland was a few steps down and tugging on my feet, which suspended my body in mid-air over the concrete steps. I thought he was going to kill me by dragging me feet first down two flights of stairs or throwing me off the top tier of the dorm.

22. Lt. Copeland kept saying, "you're not resisting huh" and that I was going to the confinement cell. I told him that I could not walk with him holding my feet. He finally let go of my feet and I walked to the confinement cell.

(Pl. Aff. ¶¶ 18-22 (emphasis added).)

There is no question whatsoever that, under Plaintiff's version of the events, Copeland used excessive force. While Copeland presents a different version of the events, it is not the place of this Court to weigh the evidence when evaluating a Motion for Summary Judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255. And certainly these factual disputes are material. Plaintiff's version of the events describes an unprovoked attack, involving a significant amount of force, that continued even after Plaintiff was on the ground, in a submissive position, and indicating that he was not resisting. A reasonable jury could return a verdict for Plaintiff on his claim for excessive force. The

undersigned therefore recommends denying the Motion for Summary Judgment on this claim.[3]

### 4. Merits of Failure to Protect Claim

Defendants contend that any claim against Laury for failure to protect fails as a matter of law. (Dkt. No. 105-1 at 19.) The undersigned disagrees.

To establish an Eighth Amendment claim for failure to protect, a prisoner must satisfy two elements. See Brown v. N.C. Dep't of Corrs., 612 F.3d 720, 722-23 (4th Cir. 2010). First, "the deprivation alleged must be sufficiently serious." Odom v. S.C. Dep't of Corrs., 349 F.3d 765, 770 (4th Cir.2003). "To demonstrate such an extreme deprivation, a prisoner must allege a serious or significant physical or emotional injury resulting from the challenged conditions." Id. Second, "a prisoner must demonstrate that the prison official had a 'sufficiently culpable state of mind.'" Brown, 612 F.3d at 723 (quoting Odom, 349 F.3d at 770). As the Fourth Circuit stated in Brown,

---

[3]Copeland also seeks summary judgment on the ground of qualified immunity. (Dkt. No. 105-1 at 12.) The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). As noted above, the undersigned concludes there is a geninue issue of material fact regarding whether Copeland used excessive force on Plaintiff. Furthermore, the right at issue in this claim was clearly established at the time of the incident in question. See Whitley v. Albers, 475 U.S. 312, 319 (1986) (Eighth Amendment forbade the "unnecessary and wanton infliction of pain" against inmates). In light of the factual dispute in the case *sub judice*, summary judgment on the issue of qualified immunity is not appropriate. See Ware v. James City County, Va., 652 F.Supp.2d 693, 702 (E.D. Va. 2009) (quoting Pritchett v. Alford, 973 F.2d 307, 314 (4th Cir.1992)) ("The qualified immunity determination should normally be made at the summary judgment stage in the litigation"; however, if there are " 'genuine issues of historical fact respecting the officer's conduct,' the United States Court of Appeals for the Fourth Circuit has stated, 'summary judgment is not appropriate, and the issue must be reserved for trial.' ").

15

> When an inmate makes a challenge under the Eighth Amendment, the requisite state of mind is one of deliberate indifference to inmate health or safety. A prison official demonstrates deliberate indifference if he knows of and disregards an excessive risk to inmate health or safety. In other words, the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.

Brown, 612 F.3d at 723 (internal quotation marks and citations omitted).

A reasonable jury could find in favor of Plaintiff on his failure to protect claim. Although Defendant contends that Plaintiff did not show evidence of "true injury," (Dkt. No. 105-1 at 18), that is simply not the case. (See Pl.'s Aff. ¶ 24; Dep. of Beth Killoy 12:11-13:15.)[4] Plaintiff presented evidence that the injuries he suffered were so severe that surgery was required. (Pl.'s Aff. ¶ 25.) The injuries described by Plaintiff certainly satisfy the "extreme deprivation" element. Plaintiff has also presented evidence of the second element. Plaintiff presented evidence that Laury came with Copeland to his cell and that she observed the altercation between Plaintiff and Copeland. (Pl.'s Aff. ¶¶ 16-20.) Under Plaintiff's version of the events, Laury watched as Copeland engaged in an unprovoked attack upon an inmate who was not resisting. (See generally Pl.'s Aff.) Plaintiff further stated that he called out to Laury "for help to stop the beating . . . from Lt. Copeland but Officer Laury just stood there and did nothing." (Id. ¶ 20.) Although Defendants' version of the facts is markedly different, taking the evidence in the light most favorable to the Plaintiff, a jury could find in Plaintiff's favor on his failure to protect claim. Accordingly, the undersigned recommends denying the Motion for Summary Judgment as to this claim.[5]

---

[4]Defendants contend that "[a]ny alleged injuries discovered sometime later were either inflicted by another inmate or Plaintiff himself (self-inflicted)." (Dkt. No. 105-1 at 18.)

[5]To the extent Laury contends she is qualified immunity, the undersigned recommends rejecting that argument for the same reason Copeland's argument on qualified immunity should be rejected. See supra n.3.

**5. State Law Claims**

Plaintiff seeks to assert state law claims for assault, battery, and gross negligence against the South Carolina Department of Corrections. (See Dkt. No. 100 at 2.) Defendants seek summary judgment on these state law claims, contending that the claims are barred by the statute of limitations and that SCDC is immune from liability pursuant to various subsections of § 15-78-60. (See Dkt. No. 105-1 at 21-21.) Defendants also contended that Plaintiff's claims against SCDC are barred pursuant to Eleventh Amendment immunity. (Dkt. No. 105-1 at 10-11.) Plaintiff opposes summary judgment on the state law claims, asserting SCDC is not immune and that the claims are timely. (See generally Dkt. No. 107.) Plaintiff also notes that § 15-78-70(c) "requires the state agency employing the person who committed the tort to be named as the party defendant in place of the individual state employee." (Dkt. No. 107 at 16.)

The undersigned recommends dismissal of the state law claims. The Eleventh Amendment provides,

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

As the Court stated in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984), "[t]he Eleventh Amendment bars a suit against state officials when "the state is the real, substantial party in interest." Pennhurst, 465 U.S. at 101 (quoting Ford Motor Co. v. Dep't of Treas., 323 U.S. 459, 464 (1945)). "It is clear . . . that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Id. at 100 (citing Fl. Dep't of Health v. Fl. Nursing Home Ass'n, 450 U.S. 147 (1981); Alabama v. Pugh, 438 U.S. 781 (1978)). The State of South Carolina has not consented to suit in federal court. See S.C. CODE ANN. §

15-78-20(e) (statute expressly provides that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to suit in a federal court or in a court of another State). The South Carolina Department of Corrections is a department of the State of South Carolina and functions as an arm of the State. See Belcher v. S.C. Board of Corrs., 460 F. Supp. 805, 809 (D.S.C. 1978). Furthermore, the Court has explicitly stated that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." Pennhurst, 465 U.S. at 121.

The Eleventh Amendment bars the tort claims against the South Carolina Department of Corrections in the instant forum. See Wilkins v. Dep't of Corr., No. 2:07-cv-3432-GRA, 2007 WL 4443087, at *3 (D.S.C. Dec. 14, 2007). Plaintiff filed the instant action in federal court; if he wanted to pursue claims against the South Carolina Department of Corrections, this case should have been filed in state court. See S.C. CODE ANN. § 15-78-10 *et seq*. Plaintiff chose to proceed against SCDC in a forum lacking jurisdiction. As such, the state law claims against the Defendant South Carolina Department of Corrections should be dismissed.[6]

---

[6] Laury seeks summary judgment on the grounds that the statute of limitations has run as to her. (See Dkt. No. 105-1 at 24-25.) For the reasons set forth above, Laury's Motion to Dismiss should be denied, and the time for service should be extended. If the time is extended as set forth above, Plaintiff's action against Laury is not barred by time. See FED. R. CIV. P. 3 ("A civil action is commenced by filing a complaint with the court.").

## **CONCLUSION**

Wherefore, it is RECOMMENDED that Laury's Motion to Dismiss (Dkt. No. 99) be DENIED. It is further RECOMMENDED that Defendants' Motion for Summary Judgment (Dkt. No. 105) be GRANTED IN PART and DENIED IN PART. Specifically, it is RECOMMENDED that Defendants' motion should be granted as to Plaintiff's state law claims. It is RECOMMENDED that Defendants' motion be denied as to Plaintiff's federal claims.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks<br>
United States Magistrate Judge

July 5, 2013
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).