UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Calvin Harris, ) | |
| ) | C/A No.: 2:11-cv-02209-GRA-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | (Written Opinion) |
| Lt Dock Copeland, a/k/a Lt John D. ) | |
| Copeland, a/k/a John Copeland; ) | |
| Officer Laury; and The South Carolina ) | |
| Department of Corrections, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Calvin Harris ("Plaintiff"), a state prisoner represented by counsel, filed this action pursuant to 42 U.S.C. § 1983.  Plaintiff brought this action on August 20, 2011.  Defendant Laury filed a Motion to Dismiss on September 12, 2011, which this Court denied on April 16, 2012.  Plaintiff was given sixty (60) days from the date of that Order to serve Defendant Laury.  ECF No. 76.  On October 8, 2012, Defendant Laury filed a second Motion to Dismiss.  ECF No. 99.  Plaintiff filed a Response to that motion on October 25, 2012.  ECF No. 100.

Additionally, Defendants filed a Motion for Summary Judgment on November 19, 2012.  ECF No. 105.  Plaintiff filed a Response in Opposition to Defendants' motion (ECF No. 107), and Defendants subsequently filed a Reply (ECF No. 109).

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(d) DSC, this case was referred to United States Magistrate Judge Bruce Howe Hendricks.  This matter now comes before the Court for review of Magistrate Judge Hendricks' Report and Recommendation on Defendant Laury's Motion to Dismiss and

Defendants' Motion for Summary Judgment. Magistrate Judge Hendricks recommends that Defendant Laury's Motion to Dismiss be DENIED and that Defendants' Motion for Summary Judgment be GRANTED IN PART and DENIED IN PART. Specifically, she recommends that Defendants' motion be granted as to Plaintiff's state law claims and denied as to Plaintiff's federal claims. After reviewing the record, the relevant law, and the Report and Recommendation, the Court agrees with and adopts the Report and Recommendation to the extent that it is consistent with this opinion.

## Standard of Review

Defendants have filed a Motion for Summary Judgment. The issue in determining a motion for summary judgment is whether there exists a genuine dispute as to any material fact. Fed. R. Civ. P. 56. Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Though this initial responsibility rests with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon bald assertions contained in the pleadings. *See Celotex*, 477 U.S. at 317.

## Background

Plaintiff, who is currently housed at Broad River Correctional Institution ("BRCI") of the South Carolina Department of Corrections ("SCDC"), seeks compensatory damages and punitive damages from Defendants pursuant to claims made under 42 U.S.C. § 1983.  Plaintiff alleges that on April 10, 2009, he was issued an "order to report" which authorized him "to report to Mr. David E. Holcombe in the education building every day from April 13–17, 2009."  ECF No. 11.  According to Plaintiff, Defendant Copeland "continually harassed" Plaintiff during this time "with regard to his reporting to the education building and would sometimes not allow him to report."  *Id.*  Plaintiff alleges that he complained to several officials at BRCI about Defendant Copeland's conduct and sought their help in stopping the alleged harassment.  Plaintiff states that Defendant Copeland knew that Plaintiff had complained about his conduct.

On April 16, 2009, Plaintiff claims that Defendants Copeland and Laury came to his cell.  He states that Defendant Copeland demanded that he turn over the "order to report."  According to Plaintiff, Defendant Copeland used profanity towards him and "threatened to keep Plaintiff locked in his cell for three weeks and feed him with bag meals until he starved."  *Id.*  Plaintiff further alleges that when he failed to turn over the "order to report," Defendant Copeland ordered him to put all of his belongings in a pillowcase because he intended to place Plaintiff in a "lock up" cell in order to coerce Plaintiff to turn over the "order to report."  When Plaintiff was unable to fit all of his belongings into the pillowcase, he "asked for an explanation of what was happening and specific instructions about what he was to do."  *Id.*

However, instead of answering Plaintiff's questions, Plaintiff alleges that Defendant Copeland "forcibly pushed the Plaintiff out of the cell." *Id.* He asserts that Defendant Copeland then tried to push him down a flight of concrete stairs, but claims that he "was able to grasp the stair rail and did not fall." *Id.* At that point, Plaintiff alleges that Defendant Copeland "jumped the Plaintiff, placed him in a headlock and threw him backward onto the floor." *Id.* Defendant Copeland then allegedly "straddled the Plaintiff's mid-section and grabbed the Plaintiff's throat to choke him." *Id.* Plaintiff states that he flipped onto his stomach in an effort to stop the chocking and "voluntarily placed his hands behind his back so that Lt. Copeland could handcuff him." *Id.* Rather than handcuffing him, however, Plaintiff alleges that while he "was in a submissive position . . . Lt. Copeland forcefully struck the Plaintiff three times to the back of his head with a gas canister wounding his head and causing it to bleed." *Id.* Plaintiff asserts that he called out to Defendant Laury for assistance to stop the beating, but she refused to intervene. Plaintiff alleges that he then told both Defendants he was not resisting. He claims that Defendant Copeland "grabbed the Plaintiff's right wrist and pulled it up vertically over the Plaintiff's head and then twisted the arm back and around inflicting excruciating pain and causing the Plaintiff's shoulder to become dislocated and fractured." *Id.*

When Plaintiff screamed out in pain, Defendant Copeland allegedly "grabbed his ankles and began dragging the Plaintiff, feet first, toward the concrete stairs." *Id.* Plaintiff claims that he grabbed hold of the stair rail, and Defendant Copeland "attempted to break the Plaintiff's hold on the stair railing by forcibly pulling on the Plaintiff's ankles." *Id.* Defendant Copeland then released Plaintiff and allowed him to

walk down the stairs. Plaintiff was placed in a "lock up" cell by Defendant Copeland, who left him there without notifying medical personnel.

Defendant Laury eventually came to the cell and notified the shift supervisor and medical authorities. Plaintiff's injuries required medical attention and he was hospitalized overnight. In fact, Plaintiff claims that he "subsequently had to undergo surgery on his right shoulder to repair the damage and several weeks of physical therapy." *Id.*

## Discussion

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* Furthermore, in the absence of specific objections to the Report and Recommendation, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

Defendants timely filed objections to the Report and Recommendation on July 22, 2013. ECF No. 125. Defendants objected to the Magistrate Judge's findings on Defendant Laury's Motion to Dismiss (ECF No. 99) and Defendants' Motion for Summary Judgment (ECF No. 105) as it relates to Plaintiff's federal law claims. *Id.*

The Plaintiff submitted a Reply to these objections on August 8, 2013. ECF No. 126. Defendants filed a Reply to Plaintiff's response on August 13, 2013. ECF No. 128. On August 19, 2013, Plaintiff submitted a Sur Reply. ECF No. 129. Later that day, Defendant Laury filed an Answer to Plaintiff's Amended Complaint, and Defendants withdrew their objections as they pertained to the issue of service on Defendant Laury. ECF Nos. 130 & 131. Defendants also withdrew their Reply to Plaintiff's Response (ECF No. 128). *Id.*

As such, each of Defendants' remaining objections is addressed herein.

## I.     Defendants' Motion for Summary Judgment

Defendants make numerous objections to the Magistrate Judge's findings on their Motion for Summary Judgment. The Court shall deal with each of these objections separately.

### A. Statute of Limitations

Defendants first object to the Report and Recommendation's alleged "failure to adequately analyze the Defendants' Motion for Summary Judgment regarding Defendant Laury's ground for dismissal of all of Plaintiff's claims against her because of Plaintiff's failure to comply with the statute of limitations." However, the Court finds that this objection is without merit.

Plaintiff brought this suit pursuant to 42 U.S.C. § 1983. "There is no federal statute of limitations for § 1983 claims, so the state limitations period which governs personal injury actions is applied." *Lewis v. Richmond City Police Dept.*, 947 F.2d 733, 735 (4th Cir. 1991) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). South Carolina has a three-year statute of limitations for personal injury claims. S.C. Code

Ann. § 15-3-530(5). However, while the statute of limitations is borrowed from state law, "in actions arising under federal law . . . the manner and timing of serving process are generally nonjurisdictional matters of 'procedure' controlled by the Federal Rules." *Henderson v. United States*, 517 U.S. 654, 656 (1996). Rule 3 of the Federal Rules of Civil Procedure states that "[a] civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. Accordingly, in a § 1983 action, "filing a complaint suffices to satisfy the statute of limitation." *Henderson*, 517 U.S. at 657 n.2 (citing *West v. Conrail*, 481 U.S. 35, 39 (1987)).

In this case, the incident giving rise to Plaintiff's § 1983 claim occurred on April 16, 2009. Thus, the statute of limitations ran on April 16, 2012. However, Plaintiff filed his Complaint in this case on August 20, 2011—well within the three-year period. Defendant's contention that a plaintiff in a § 1983 case must serve process before the statute of limitations has run is simply incorrect. Accordingly, this objection is overruled.

### B. Failure to Protect Claim

Defendants next object to the Magistrate Judge's recommendation to deny the Motion for Summary Judgment on Plaintiff's failure to protect claim. Defendants object both to the Report's reliance on Plaintiff's affidavit to create a genuine dispute of material fact and to the Magistrate Judge's application of the law. The Court finds that these objections should be overruled.

In order to establish a claim for failure to protect under the Eighth Amendment, an inmate must show: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health or safety.

*De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks omitted).  A prison official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety."  *Brown v. N.C. Dep't of Corrs.*, 612 F.3d 720, 723 (4th Cir. 2010).  "Mere negligence" by the prison official does not constitute deliberate indifference.  *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

Defendants first object to the Magistrate Judge's ruling because they contend that "Plaintiff's affidavit is insufficient to defeat Defendant's summary judgment motion."  ECF No. 125.  They argue that "genuine disputes of material facts are *not demonstrated* by the bald statements of a non-moving party in pleadings, affidavits, or other documents."  *Id.*

It is well-settled that Rule 56 of the Federal Rules of Civil Procedure requires the nonmoving party in a summary judgment motion "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  If "the non-movant's version is supported by sufficient evidence to permit a reasonable jury to find the fact in his favor," then summary judgment is not appropriate.  *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 175 (4th Cir. 1988).

In this case, Plaintiff has done much more than merely submit bald statements to try to create a genuine dispute of material fact.  First of all, Plaintiff's affidavit sets forth specific facts of his version of events that, taken in the light most favorable to Plaintiff, could be found by a reasonable jury to support a failure to protect claim.

First of all, Plaintiff's affidavit sets forth evidence of significant injury. For instance, Plaintiff states that after the incident, on January 8, 2010, he had "to undergo surgery on [his] right shoulder . . . followed by several weeks of painful physical therapy." ECF No. 107-3. The affidavit also sets forth evidence of deliberate indifference. Plaintiff states that Defendant Laury came with Defendant Copeland to his cell and observed the altercation. *Id.* However, when Plaintiff stated that he was not resisting and called out for help "Officer Laury just stood there and did nothing." *Id.*

While Plaintiff's affidavit alone sets forth specific alleged facts that would preclude a finding of summary judgment, Plaintiff has also submitted other evidence to support his position. Plaintiff submitted the affidavit of Ronald Thomas who stated that he personally observed the incident and that "Officer Laury stood and watched without intervening." ECF No. 107-7. Ira Brooks also provided an affidavit in which he stated "Calvin Harris was yelling to Officer Laury for help but she just stood there." ECF No. 107-11. Plaintiff submitted the deposition of Beth Killoy, who testified about the seriousness of Plaintiff's injuries. ECF No. 107-13. Additionally, Plaintiff provided his medical records. ECF No. 107-15.

As such, the Court finds that genuine disputes of material fact exist on the failure to protect claim, and, therefore, summary judgment is not appropriate. Accordingly, Defendants' objection is overruled.

### C. Individual Capacities of Defendant Copeland and Defendant Laury

Defendants next object to the portion of the Report and Recommendation that deals with whether Defendants Copeland and Laury were sued in their official capacities or in their individual capacities. Defendants first object to any portion of

the Report that states "Defendants contend that Plaintiff's Amended Complaint 'makes allegations against Defendant Copeland and Defendant Laury *only within their individual capacities.*'" ECF No. 125. Secondly, Defendant's object to the Magistrate Judge's actual finding that Defendant Copeland and Defendant Laury were in fact sued in their individual capacities. *Id.*

As a preliminary matter, Defendants are correct in their contention that the Magistrate Judge erred in stating that "Defendants contend that Plaintiff's Amended Complaint 'makes allegations against Defendant Copeland and Defendant Laury *only within their individual capacities.*'" *See* ECF No. 124. Defendants Motion for Summary Judgment and Memorandum in Support clearly allege that Plaintiff's Amended Complaint only "makes allegations against Defendant Lt. Copeland and Defendant Cathleen Laury as Defendants only within their official capacity." ECF Nos. 105 & 105-1. As such, it appears the Magistrate Judge made a typographical error. Nevertheless, this error was harmless and did not affect the Magistrate's analysis of Defendants' claim.

Section 1983 provides plaintiffs a federal forum to remedy deprivations of civil liberties by a person acting under the color of state law. 42 U.S.C. § 1983. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Conversely, state officials sued in their individual capacities constitute "persons" for § 1983 purposes and are subject to suit. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). It is not a prerequisite for a plaintiff to state that he is suing a defendant in his or her individual capacity in order to state a cause of action under § 1983. *Biggs v.*

*Meadows*, 66 F.3d 56, 60 (4th Cir. 1995). When a plaintiff does not specifically allege the capacity in which he is suing a defendant, "the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. With respect to the nature of the plaintiff's claims, "the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint," indicates that the defendant has been sued in his or her individual capacity. *Id.* As to the nature of the relief a plaintiff seeks, the Fourth Circuit stated that "a plaintiff's request for compensatory or punitive damages" may indicate that a defendant is being sued personally, "since such relief is unavailable in official capacity suits." *Id.* Finally, "[b]ecause qualified immunity is available only in a personal capacity suit, . . . the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally." *Id.* (internal citations omitted).

In this case, the Court agrees with the Magistrate Judge and finds that Plaintiff sued Defendant Copeland and Defendant Laury in their individual capacities. Plaintiff's Amended Complaint does not argue that Defendant Copeland or Defendant Laury acted in accordance with any policy or custom of SCDC. *See* ECF No. 11. Moreover, Plaintiff seeks compensatory and punitive damages from Defendants. *Id.* Finally, both Defendant Copeland and Defendant Laury allege qualified immunity in this case. *See* ECF Nos. 21 & 130. As such, the Defendants' objection is overruled.

### D. Qualified Immunity

Defendants next object to the Magistrate Judge's finding that Defendant Copeland and Defendant Laury are not entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether an official has properly set forth a qualified immunity claim, a Court must decide: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and (2) "whether the right was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (internal citations omitted). While the decision on whether or not a defendant is entitled to qualified immunity is encouraged to be made at the summary judgment stage, "[i]f there are genuine issues of historical fact respecting the officer's conduct or its reasonableness under the circumstances, summary judgment is not appropriate, and the issue must be reserved for trial." *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992).

Here, as outlined above, Plaintiff has sufficiently demonstrated that there are genuine disputes of material fact as to his failure to protect claim against Defendant Laury. Moreover, as detailed below, the Court finds that Plaintiff has also shown that genuine disputes of material fact exist on his excessive force claim against Defendant Copeland. As such, the Court cannot find that these Defendants are entitled to qualified immunity at this stage. Therefore, summary judgment is not appropriate, and the objection is overruled.

**E. Excessive Force Claim**

Finally, Defendants object to the portions of the Report and Recommendation that recommend denying summary judgment on Plaintiff's excessive force claim against Defendant Laury. When an inmate claims the use of excessive force by a prison official in violation of the Eighth Amendment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992). In fact, an inmate may state a valid excessive force claim even if he "does not suffer serious injury." *Id.* at 4. However, in making this determination, a court should consider such factors as "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (internal quotation marks and alterations omitted); *see Wilkins v. Geddy*, 559 U.S. 34, 37 (2010) (holding that the "extent of injury suffered by an inmate" continues to be a factor in the Eighth Amendment inquiry). These factors should be balanced against such factors as "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321.

In this case, a genuine dispute of material fact exists on Plaintiff's excessive force claim against Defendant Copeland. While Defendant Copeland presents a much different version of events, Plaintiff's statements in his affidavit create a genuine dispute as to whether Defendant Copeland acted "maliciously and sadistically to cause harm." Plaintiff's affidavit states that after Plaintiff would not turn

over the "order to report" to Defendant Copeland, Defendant Copeland "started yelling profanity" and "threatened to keep [him] deadlocked in [his] cell for three weeks and feed [him] bag meals until [he] starved." ECF No. 107-3. Defendant Copeland then left and returned a few minutes later with Defendant Laury. *Id.* Defendant Copeland told Plaintiff to put all of his belongings in a pillowcase. *Id.* When Plaintiff asked if he was going to the "deadlock cell" and told Defendant Copeland that he wanted him to write up the incident, Plaintiff alleges that Defendant Copeland pushed him out of the cell. *Id.* Defendant Copeland then allegedly tried to push Plaintiff down the stairs, but Plaintiff "was able to grab hold of the stair rail to keep from falling." *Id.* At this point, Plaintiff claims that Defendant Copeland "jumped on [him], put [him] in a headlock / chokehold and threw [him] backward onto the floor." *Id.* Plaintiff then flipped onto his stomach and put his hands behind his back to be handcuffed. However, rather than handcuffing Plaintiff, Defendant Copeland allegedly hit Plaintiff three times in the back of the head with a gas canister. Plaintiff alleges that he told both Defendant Copeland and Defendant Laury that he was not resisting, but Defendant Copeland continued. Plaintiff states that he "put his knee on [Plaintiff's] back, grabbed [his] right wrist and pulled it up vertically over [Plaintiff's] head and then twisted it back and around." *Id.* Defendant Copeland then allegedly grabbed Plaintiff's ankles and attempted to drag him down the stairs, but Plaintiff grabbed hold of the stair rail. Finally, Defendant Copeland let go, and Plaintiff walked to the confinement cell. *Id.* Medical personnel were not called right away, but Plaintiff claims that he eventually had to have surgery for his injuries. *Id.*

Plaintiff has also submitted further evidence in support of his version of events, and does not attempt to merely rely on his own affidavit. Ronald Thomas stated that he saw Defendant Copeland put Plaintiff "in a chokehold for no apparent reason and slam[ ] [him] to the floor." ECF No. 107-7. He also saw Defendant Copeland hit Plaintiff in the back of the head and attempt to drag him down the stairs. *Id.* Mr. Thomas states that he heard Plaintiff scream and yell to the officers that he was not resisting. *Id.* Additionally, Plaintiff provided the affidavit of Ira Brooks, which further corroborates Plaintiff's version of events. ECF No. 107-11. Finally, as evidence of the seriousness of his injuries, Plaintiff submitted the deposition of Beth Killoy and his medical records. ECF Nos. 107-13 & 107-15.

Because a genuine dispute of material facts exist as to Plaintiff's excessive force claim, summary judgment is inappropriate. As stated by the Magistrate Judge, "Plaintiff's version of the events describes an unprovoked attack, involving a significant amount of force, that continued even after Plaintiff was on the ground, in a submissive position, and indicating that he was not resisting." ECF No. 124. Therefore, the Court finds that a reasonable jury could find for the Plaintiff on the facts presented on his excessive force claim, and therefore, Defendants' objection is overruled.

## Conclusion

After a review of the record, this Court finds that the Magistrate Judge's Report and Recommendation accurately summarizes this case and the applicable law. Accordingly, the Report and Recommendation is accepted and adopted to the extent that it is consistent with this opinion.

**IT IS THEREFORE ORDERED** that Defendant Laury's Motion to Dismiss (ECF No. 99) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 105) is GRANTED as to Plaintiff's state law claims. The motion is DENIED as to Plaintiff's federal claims.

**IT IS SO ORDERED.**

G. Ross Anderson, Jr.
Senior United States District Judge

August  22 , 2013
Anderson, South Carolina