UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Calvin Harris, | ) | |
| | ) | C/A No.: 2:11-cv-02209-GRA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | (Written Opinion) |
| Lt. Dock Copeland, Officer Cathleen | ) | |
| Laury and the South Carolina | ) | |
| Department of Corrections, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter comes before the Court upon Plaintiff's motions *in limine* filed on January 8, 2013 which seek to: (1) prohibit Defendants from referencing that Lt. Dock Copeland was administered a polygraph examination; (2) prohibit Defendants from referring to prison disciplinary actions as a "conviction"; (3) prohibit Defendants from introducing evidence of prior disciplinary violations by Plaintiff; and (4) prohibit Defendants from introducing evidence that Plaintiff or Fred Flores posed a threat to Lt. Copeland. ECF No. 112. Defendants filed a response in opposition to the motions *in limine* on January 25, 2013. ECF No. 115. Plaintiff filed a reply to Defendants' response on February 4, 2013. ECF No. 122.

## Background

Plaintiff, an inmate at Broad River Correctional Institution ("BRCI"), states in his Amended Complaint that he was issued an "order to report" authorizing him to report to David E. Holcombe in the education building every day between April 13 and April 17, 2009. ECF No. 11. During this time, Plaintiff claims that Lt. Copeland continually harassed him and sometimes prevented him from reporting. *Id.* Plaintiff

reported this harassment to several officials at BRCI, and Lt. Copeland was aware of Plaintiff's complaints.  *Id.*

Plaintiff alleges that on April 16, 2009, Lt. Copeland and Officer Laury came to Plaintiff's cell, where Lt. Copeland demanded that Plaintiff turn over the "order to report."  *Id.*  During this encounter, Plaintiff contends that Lt. Copeland used profanity towards him and threatened to keep him locked in his cell without food for three weeks and "feed him with bag meals until he starved."  *Id.*  Plaintiff further alleges that when he refused to turn over the order to report, Lt. Copeland told him to put all of his belongings in a pillowcase so that Plaintiff could be placed in a "lock up" cell.  *Id.*  Plaintiff claims that when he asked for an explanation of what was happening, Lt. Copeland pushed him out of the cell and attempted to push him down a flight of concrete stairs.  *Id.*  Plaintiff states that he was able to grasp the stair rail and avoid falling down the stairs, but Lt. Copeland then placed him in a headlock, threw him on the floor, choked him, struck him three times to the back of the head with a gas canister, and twisted his right arm causing it to dislocate and fracture.  *Id.*  Plaintiff asserts that during this incident, Plaintiff called out to Officer Laury for help but Officer Laury refused to intervene.  *Id.*  Plaintiff then claims that Lt. Copeland began dragging him towards the stairs where Plaintiff was once again able to grab the stair rail.  *Id.*  Plaintiff states that after this, Lt. Copeland allowed Plaintiff to walk down the stairs and then placed Plaintiff in "lock up" without notifying medical personnel.  *Id.*  Plaintiff claims that Officer Laury came to the "lock up" cell later and, at that time, notified the shift supervisor and medical authorities.  *Id.*  Plaintiff's Amended Complaint says that Plaintiff was transferred to the infirmary at Kirkland Correctional Institution where he

was hospitalized overnight, and that he later underwent surgery on his right shoulder and several weeks of physical therapy. *Id.*

Plaintiff's Amended Complaint asserted causes of action for excessive use of force in violation of 42 U.S.C. § 1983, as well as causes of action for assault, battery, and gross negligence. *Id.* The parties agreed to strike BRCI from the pleadings and dismiss the action against it, and further agreed to substitute the South Carolina Department of Corrections ("SCDC") in place of BRCI. ECF No. 42. This Court has since issued one order denying two separate motions to dismiss by Officer Laury. ECF No. 76. This Court has then issued another order denying another motion to dismiss by Officer Laury as well as granting in part and denying in part a Motion for Summary Judgment by all Defendants, specifically granting the motion for summary judgment as to Plaintiff's state law claims including assault, battery, and gross negligence but denying the motion for summary judgment as to Plaintiff's federal claim under 42 U.S.C. § 1983. ECF No. 132.

## **Discussion**

Plaintiff makes four requests in his filing before the Court. ECF No. 112. The Court shall deal with each motion *in limine* separately.

<u>Plaintiff's First Motion *in Limine*</u>

Plaintiff, in his first motion *in limine*, motions this Court to issue an order prohibiting Defendants from referencing the fact that Lt. Dock Copeland took a polygraph examination or the results of that polygraph examination during the "opening statement, closing arguments and examination of witnesses," and to have Defendants instruct their witnesses not to mention the polygraph test nor its results

while testifying. *Id.* Plaintiff bases this request on Fed. R. Evid. 702, governing testimony by expert witnesses, as well as *United States v. Prince-Oyibo*, 320 F.3d 494 (4th Cir. 2003). ECF No.112. Plaintiff argues that *Prince-Oyibo* recognizes a long-standing Fourth Circuit rule barring the admission of any polygraph evidence, even merely mentioning that a witness has taken a polygraph. *Id.*

Defendants first argue that *Prince-Oyibo* only bars the results of a polygraph test when they are used "to bolster or undermine credibility." ECF No. 115. Defendants point to *Miller v. Drennon*, 966 F.2d 1443, No. 91-2166 (4th Cir. June 19, 1992) (unpublished opinion), a Fourth Circuit case which states that although polygraph tests may not be used to attack or bolster credibility, they may be used for other reasons. *Id.* at *5. Defendants believe that using the polygraph examination to show steps taken by SCDC to investigate Plaintiff's claims would be allowed under the rule as set forth in *Prince-Oyibo*. ECF No. 115. Defendants next argue that the per se rule against the admissibility of polygraph tests only applies to ordinary negligence cases and this case involving a claim under 42 U.S.C. § 1983 for excessive use of force is assessed under a "deliberate indifference" standard rather than an "ordinary negligence" standard. ECF No. 115. Defendants additionally believe that Plaintiff's motion *in limine* to exclude the polygraph examination goes against what Plaintiff himself plans to offer at trial since Plaintiff's Pretrial Disclosures list the polygraph report. *Id.* Finally, Defendants believe this motion to be premature given that the polygraph may be admissible for certain purposes at trial but not for others, and that Plaintiff may open the door to the use of the polygraph test at trial. *Id.*

Plaintiff, in his reply, attempts to counter all of Defendants' arguments for allowing the polygraph. ECF No. 122. First, Plaintiff objects to Defendant's claim that the polygraph test may be used for reasons other than attacking or bolstering credibility. *Id.* Plaintiff believes that relying on *Miller*, an unpublished opinion and therefore not binding authority, is misplaced given the facts of *Miller*, which involved the refusal of the plaintiff in that case to take a polygraph while another party did take a polygraph. *Id.* The Fourth Circuit allowed the admission of polygraph evidence in *Miller* "to rebut Miller's claim that the County acted arbitrarily in suspending him." *Miller*, 966 F.2d at *5. Plaintiff points out that *Miller* only relied on one other Fourth Circuit case, *United States v. A & S Council Oil Co.*, 947 F.2d 1128 (4th Cir. 1991). *Id.* The Fourth Circuit allowed otherwise inadmissible polygraph results in *A & S Council Oil Co.* "to attack the opinion and credibility of the government's expert witness" who had used the polygraph when forming his opinion. *A & S Council Oil Co.*, 947 F.2d at 1135. Plaintiff believes the instant case is distinguishable from *A & S Council Oil Co.* because Defendants will not be cross-examining an expert witness who used the polygraph as the basis of their opinion. ECF No. 122

Plaintiff argues that the Fourth Circuit in *Miller* did not create an exception to the per se rule against polygraphs, but merely admitted polygraph evidence to show that the defendants did not act arbitrarily, which is not an issue here because Plaintiff has not claimed that the Defendants acted arbitrarily. *Id.* Additionally, while the plaintiff in *Miller* refused to take a polygraph, the plaintiff in the instant case was never offered a polygraph. *Id.* Plaintiff directs this Court to how little weight the Fourth Circuit gave the polygraph in *Miller* when it stated that "if admission was error, it was

harmless." *Id.* Plaintiff believes that the current case involves a much greater risk of prejudice since this case is a jury trial, whereas *Miller* was a bench trial. ECF No. 122. Therefore, Plaintiff does not believe that a curative instruction telling the jury to only consider the polygraph for the purpose of showing steps taken by Defendant to investigate the incident and not for the purpose of boosting Lt. Copeland's credibility will be sufficient. *Id.* Finally, Plaintiff argues that admitting the polygraph would be cumulative since Lt. Copeland made statements during the pre-polygraph interview and the post-polygraph interview that are admissible as non-hearsay statements by an opposing party under the Federal Rules of Evidence. Fed. R. Evid. 801(d)(2); *See* ECF No. 122. Plaintiff believes that Nicolee Coggins, who performed these interviews, could testify as to the statements and could even use the polygraph to refresh her recollection without opening the door to the admission of the polygraph itself. ECF No.122; *see* Fed. R. Evid. 612.

The Fourth Circuit under the "*Frye* test" "previously held polygraph evidence per se inadmissible." *Prince-Oyibo*, 320 F.3d at 497. In *Prince-Oyibo,* the Fourth Circuit addressed the shift from the "*Frye* test" to the standard set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *Prince-Oyibo*, 320 F.3d at 498. The Fourth Circuit stated that *Daubert* at least "throws into doubt the viability of our per se rule that the results of an accused's or a witness's polygraph test are inadmissible to bolster or undermine credibility." *Id.* at 499. The Fourth Circuit however, "continued to invoke its longstanding per se rule against the admission of polygraph evidence" after *Daubert*. *Id.* at 499-500. The Fourth Circuit in *Prince-Oyibo* details a series of cases where they could have overturned the per se ban on

the admission of polygraphs but did not ultimately decide to do so.  *Id.* at 500.  While the court in *Prince-Oyibo* stated that these previous cases did not foreclose the possible future shift in Fourth Circuit precedent on polygraph evidence, the court ultimately decided that "our post-*Daubert* precedents foreclose our abandonment today of this Circuit's per se rule."  *Id.* at 500-01.  The Fourth Circuit in *Prince-Oyibo* ultimately decided that "only the en banc Court has the authority to consider whether" the per se rule is no longer possible after *Daubert*.  *Id.* at 501.

The Fourth Circuit in an unpublished *per curiam* 2006 decision stated that "[i]t is well-established in this Circuit that polygraph examination results, or even the reference to the fact that a witness has taken a polygraph examination, are not admissible." *United States v. Nelson*, 207 Fed. Appx. 291, 292-93 (4th Cir. 2006) (per curiam) (unpublished).  The Fourth Circuit in a 2009 case stated that while polygraphs are generally admissible, testimony about a polygraph may be admissible "where it is not offered to prove the truth of the polygraph result, but instead is offered for a limited purpose."  *United States v. Blake*, 571 F.3d 331, 346 (4th Cir. 2009) (internal citations omitted).  In *Blake*, the Fourth Circuit upheld the trial court's decision to permit the government to introduce evidence of the polygraph to counter defense counsel's allegations when "defense counsel opened the door to questioning about the polygraph" by alleging that the defendant's interrogation was coercive.  *Id.* at 348.

In the present case, it appears that the polygraph evidence would be primarily for the purposes of bolstering the credibility of Lt. Copeland.  As the Fourth Circuit has not yet decided a case *en banc* regarding whether the per se rule is no longer

viable under *Daubert*, it appears that this rule remains effective; thus, use of Lt. Copeland's polygraph evidence to bolster his credibility is inadmissible. Furthermore, in the present case, admitting the polygraph evidence may be unnecessary as Nicolee Coggins appears able to testify as to statements made to her by Lt. Copeland. However, it appears that the polygraph evidence may be admissible if Plaintiff or Plaintiff's counsel were to open the door by referencing the polygraph evidence. Therefore, Plaintiff's first motion *in limine* is DENIED.

Plaintiff's Second Motion *in Limine*

Plaintiff, in his second motion *in limine*, motions this Court to prohibit Defendants "from calling the administrative resolution of a prison disciplinary infraction a 'conviction.'" ECF No. 112. Plaintiff relies on Rule 403, which bars evidence when the "probative value is substantially outweighed by a danger of" unfair prejudice, issue confusion, or misleading the jury. Fed. R. Evid. 403. Plaintiff argues that these prison disciplinary infractions, which involve administrative resolution within the SCDC, do not carry the same level of due process that is afforded a person found guilty of a criminal offense, and that referring to these administrative infractions could mislead the jury. ECF No. 112.

Defendants counter Plaintiff's second motion *in limine* by asserting that "SCDC policy requires that administrative resolutions have the words 'guilty' and 'convicted' be entered into an automated records system upon disposition." ECF No. 115. Inmates may choose to have an incident handled administratively, and inmates that choose the administrative resolution "will fail to earn good time for the month of the infraction (if eligible to earn good time) but no earned good time will be taken from the

inmate."  *Id.*  Whereas, refusing administrative resolution and requesting a disciplinary hearing subjects the inmate to the possibility of additional sanctions if found guilty.  *Id.*  Plaintiff signed a form accepting an administrative resolution to his "False Statement to Harm" charge and in doing so waived his right to a disciplinary hearing as well as his grievance rights.  *Id.*  Defendants argue that Plaintiff and Plaintiff's counsel may distinguish this type of conviction when speaking to the jury to alleviate any issues of jury confusion.  *Id.*

Plaintiff's reply to Defendants' response argues that it is irrelevant that SCDC policy requires the use of the words "guilty" and "conviction" when entering the disciplinary infraction into the computer system.  ECF No. 122.  Plaintiff also contends that his knowledge that the words "guilty" and "convicted" would be entered into the computer system does not resolve the issue of whether these are acceptable terms for Defendants to use in court as the probative value of these words may still be outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.  *Id.*; *See* Fed. R. Evid. 403.  Plaintiff does not object to testimony that Plaintiff was accused of making a false statement to harm or that Plaintiff was punished for making a false statement to harm.  ECF No. 122.

While administrative resolution of a prison disciplinary infraction is not the functional equivalent of a conviction of a criminal offense, this Court is not persuaded that Plaintiff's motion *in limine* to bar Defendants from calling the administrative resolution a "conviction" should be granted at this time.  SCDC policy attaches the labels "guilty" and "conviction" to these administrative resolutions, and Plaintiff voluntarily agreed to handle his infraction under the administrative resolution

procedures. Plaintiff has not provided any case law or statutory provisions to support his argument, rather Plaintiff has merely posited that possible unfair prejudice or jury confusion may substantially outweigh the probative value of the evidence. Fed. R. Evid. 403. Finally, Plaintiff and Plaintiff's counsel will be able to distinguish these administrative resolutions from criminal convictions during the trial, and this distinction should be sufficient to prevent unfair prejudice or jury confusion that would substantially outweigh any probative value. *See* Fed. R. Evid. 403. Therefore, Plaintiff's second motion *in limine* is DENIED.

Plaintiff's Third Motion *in Limine*

Plaintiff, in his third motion *in limine*, motions this Court to prohibit Defendants "from introducing evidence of prior disciplinary violations by the Plaintiff." ECF No. 112. Plaintiff grounds this argument on Rules 403 and 404(b) on the belief that the probative value is substantially outweighed by the danger of unfair prejudice and the rule that "evidence of a crime, wrong or other act" is not admissible simply to prove that a person "acted in accordance with that character." Fed. R. Evid. 403 & 404(b). Plaintiff asserts that this evidence of prior disciplinary violations does not fall under a permitted use "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b); ECF No. 112. Plaintiff argues that this evidence would only be useful for the impermissible purpose of showing "Plaintiff's character for being a bad person or a violent person and that he acted in accordance with these character traits" during the incident at issue. ECF No. 112; *see* Fed. R. Evid. 404(b)(1).

Defendants' response asserts that these prior disciplinary infractions could be admissible to show motive and opportunity since Plaintiff was disciplined for a prior incident between himself and Defendant Copeland. ECF No. 115; *see* Fed. R. Evid. 404(b)(2). Plaintiff and Defendant Copeland were involved in an incident in the cafeteria of BRCI in November 2007, where Plaintiff was subsequently charged with assault and battery of an employee and convicted of striking an employee as a result. ECF No. 115. Defendants believe that this 2007 incident shows Plaintiff had motive and opportunity, which are relevant to the instant case. *Id.* Plaintiff filed a lawsuit over this 2007 incident which Defendants believe shows that Plaintiff's current lawsuit is not simply a "one-time" incident. *Id.*; *see Harris v. S.C. Dep't Corr. et al*, C/A No. 8:08-cv-22-GRA, 2008 WL 4616773 (D.S.C. Oct 16, 2008). Defendants also allege that Plaintiff has stated his belief that the two incidents are related to each other and that the current incident was foreseeable and some separation or caution order should have been issued. ECF Nos. 115 & 115-10. Additionally, Defendants assert that the connection between these incidents suggests the probative value of admitting evidence of the prior incident outweighs any unfair prejudice to Plaintiff. ECF No. 115; *see* Fed. R. Evid. 403. Finally, Defendants argue that this motion to exclude reference to the prior 2007 incident is premature because evidence may develop at trial opening the door to this issue. ECF No. 115.

Plaintiff's reply to Defendants' response asserts that there is no logical relevance or connection between the incident that forms the basis of the present lawsuit and the previous 2007 incident between Plaintiff and Lt. Copeland. ECF No. 122. Plaintiff believes that the prior incident does not fit within any of the allowable

uses listed in Rule 404(b)(2) because Plaintiff was not the aggressor in the incident at issue in this lawsuit, and Plaintiff could not possibly have a "motive, opportunity, plan, or intended to be assaulted and sustain serious bodily injury." ECF No. 122; *see* Fed. R. Evid. 404(b)(2). Furthermore, Plaintiff does not believe that the 2007 incident reveals a history between Plaintiff and Lt. Copeland because the facts are "sufficiently different to negate any alleged connection between the 2007 and 2009 incidents." ECF No. 122. For example, the 2007 incident involved Plaintiff poking his finger into Lt. Copeland's chest after Lt. Copeland stopped Plaintiff from going to the cafeteria serving line to get a napkin. *Id.* In addition, Plaintiff notes thats there have not been any other incidents between the two parties. *Id.* Moreover, Plaintiff asserts that "history" between the two parties is not a permitted use of prior acts or wrongs under Rule 404(b)(2). *Id.*; *see* Fed. R. Evid. 404(b)(2).

Plaintiff relies on Rules 403 and 404(b) in support of his position that this Court should exclude evidence of Plaintiff's prior disciplinary violations. Rule 404 is satisfied by the fact that these previous violations, which also involve Plaintiff and Lt. Copeland, act to show why Plaintiff had motive or opportunity to be involved in the incident in question involving Lt. Copeland. Fed. R. Evid. 404(b)(2). Plaintiff and Lt. Copeland were both involved in the 2007 incident, which resulted in disciplinary action against Plaintiff and Plaintiff's filing of a lawsuit against Lt. Copeland that was dismissed at summary judgment stage. *Harris v. S.C. Dep't Corr. et al*, C/A No. 8:08-cv-22-GRA, 2008 WL 4616773 (D.S.C. Oct 16, 2008). Additionally, Plaintiff in his own testimony admitted he believes the two incidents to be related. ECF No. 115-10. Rule 403 is satisfied by the fact that the probative value of showing this related 2007

incident is not "substantially outweighed" by any unfair prejudice, issue confusion, or misleading the jury that may result from mentioning this prior incident. Fed. R. Evid. 403. Therefore, Plaintiff's third motion *in limine* is DENIED.

Plaintiff's Fourth Motion *in Limine*

Plaintiff, in his fourth and final motion *in limine*, motions this Court to prevent Defendants "from introducing evidence [that] the Plaintiff and/or Fred Flores posed a threat to Lt. Copeland." ECF No. 112. Plaintiff relies on Rule 403 for this motion and believes that the probative value of this evidence would be substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury. Fed. R. Evid. 403; ECF No. 112. Plaintiff claims that no evidence exists suggesting that either Plaintiff or Fred Flores posed a threat, and specifically notes that Lt. Copeland testified that he did not feel physically threatened. ECF Nos. 112 & 112-2. Additionally, Warden Robert Stevenson testified that there were no write-ups involving threats against Lt. Copeland and that he did not recall Fred Flores ever verbally threatening Lt. Copeland. ECF No. 112-3.

Defendants' response alleges that "the possibility of a threat to Lt. Copeland certainly existed" even if in hindsight "there may not have been a threat by Plaintiff." ECF No. 115. Defendant bases this belief that Plaintiff or Fred Flores could pose a threat to Lt. Copeland on Lt. Copeland's testimony that "anything can happen" in prison and that Lt. Copeland had no way of knowing whether a threat existed. *Id.*; ECF No. 115-11. Defendant argues that, even though Lt. Copeland's testimony states he did not feel physically threatened by Plaintiff, Plaintiff may still have posed a threat at the time of the incident. ECF No. 115.

Plaintiff's reply to Defendants' response asserts that Defendants essentially concede in their response to the motion *in limine* that Plaintiff and Fred Flores were not a security threat to Lt. Copeland by stating that "in hindsight, there may not have been a threat by Plaintiff." ECF Nos. 115 & 122. Plaintiff argues that Lt. Copeland did not have any facts or evidence indicating an increased risk, and Lt. Copeland, in fact, admitted he did not feel physically threatened. ECF Nos. 122 & 122-5. Plaintiff argues that the mere possibility that a security threat existed is insufficient to admit this evidence. ECF No. 122. Plaintiff believes that the probative value in identifying Plaintiff and Fred Flores a security threat is substantially outweighed by the unfair prejudice and jury confusion that would come from this labeling. ECF No. 122; *see* Fed. R. Evid. 403.

Plaintiff relies solely on Rule 403 in seeking to prevent Defendants from presenting evidence that Plaintiff or Fred Flores posed a security threat to Lt. Copeland. It does not appear based on the facts before this Court that the probative value of introducing such evidence is substantially outweighed by any unfair prejudice, issue confusion, or jury misleading that may arise. Fed. R. Evid. 403. Additionally, Plaintiff and Plaintiff's counsel will be able to counter any evidence introduced by Defendants showing that Plaintiff or Fred Flores posed a threat, with evidence of their own that Lt. Copeland did not feel physically threatened. Therefore, Plaintiff's fourth motion *in limine* is DENIED.

**IT IS THEREFORE ORDERED** that Plaintiff's motions *in limine* are DENIED

**IT IS SO ORDERED.**

*[signature]*

G. Ross Anderson, Jr.
Senior United States District Judge

September  26 , 2013
Anderson, South Carolina